

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

March 16, 2016

**By Hand Delivery**

The Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    Civil Investigative Demand No. 15-78

Dear Judge Batts:

      The United States submits this letter motion in support of its unopposed application for an order directing the New York City Department of Health and Mental Hygiene ("NYC DOHMH") to produce information in response to a Civil Investigative Demand.

      The United States Department of Housing and Urban Development provides funding to the New York City Housing Authority ("NYCHA") for the provision and maintenance of public housing in New York City. Federal regulations require NYCHA to maintain public housing so that it is decent, safe, sanitary, and in good repair. *See, e.g.*, 24 C.F.R. § 5.703; 24 C.F.R. § 902.21. NYCHA must also comply with all federal requirements regarding lead and lead-based paint in public housing. *See e.g.*, 24 C.F.R. Part 35, subparts A-R.

      The United States is currently investigating the health and safety conditions in NYCHA public housing, as well as potentially false claims that NYCHA has made to the United States related to such conditions in possible violation of the False Claims Act. *See* 31 U.S.C. § 3729 *et seq.* Under the False Claims Act, the United States is authorized to issue civil investigative demands to persons in possession of documentary material or information relevant to the false claims investigation. *See id.* § 3733. On November 9, 2015, the United States issued a Civil Investigative Demand to NYC DOHMH seeking, *inter alia*, information about individuals with elevated blood-lead levels in NYCHA public housing and documents reflecting complaints of unsafe, unsanitary, or unhealthful conditions in NYCHA public housing ("CID 15-78," a copy of which is attached as Exhibit A).

      NYC DOHMH has asserted that without a court order, Article 11 of the NYC Health Code and/or Section 18 of the New York State Public Health Law prevent NYC DOHMH from producing certain materials responsive to CID 15-78 that reflect individuals' medical or individually identifiable information, patient information, and information from the New York City children's blood lead registry. However, NYC DOHMH has agreed to produce this information upon entry of the enclosed court order, and it does not oppose the United States'

Page 2

application for such an order.

The information sought by CID 15-78 is relevant to the United States' investigation into whether NYCHA has made false claims for payment to the United States pertaining to health and safety conditions in NYCHA public housing.  Production of the information is in the interest of justice.  Accordingly, the United States respectfully requests that the Court enter the enclosed order directing NYC DOHMH to produce documents and information responsive to CID 15-78.

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
ROBERT WILLIAM YALEN
MÓNICA P. FOLCH
TALIA B. KRAEMER
Assistant United States Attorneys
(212) 637-2722/6559/2822

Enclosures

cc:  Terri Feinstein Sasanow, New York City Law Department *(by E-Mail)*

Exhibit A



**United States Attorney's Office**
*Southern District of New York*
*Civil Frauds Unit*
86 Chambers Street, 3rd Floor
New York, New York 10007

## Civil Investigative Demand

| TO: | NYC Department of Health & Mental Hygiene | Civil Investigative |
| | 125 Worth Street, Ninth Floor | Demand No. 15-78 |
| | New York, New York 10013-4089 | |

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. § 3733, in the course of a False Claims Act investigation, to determine whether there is or has been a violation of 31 U.S.C. § 3729 *et seq.*

The False Claims Act investigation concerns possible false claims submitted to the U.S. Department of Housing and Urban Development by the New York City Housing Authority, the New York City Department of Homeless Services and/or the City of New York.

| Assistant United States Attorney/<br>False Claims Act Investigator | Address and Phone Number |
| --- | --- |
| Robert W. Yalen, Mónica P. Folch | 86 Chambers Street, 3rd Floor, New York, NY 10007     Ph:     (212) 637-2722/6559 |

| | | |
| --- | --- | --- |
| ☒ | You are required by this Demand to produce any and all documents in your possession that are responsive to the requests set forth in the attached rider.  You shall produce such documentary material responsive to this Demand under a sworn certificate, as required by 31 U.S.C. § 3733(f).  You are required to produce these documents on the date and at the time designated, or on a date mutually agreed upon between you and the Assistant United States Attorney named above, to the United States Attorney's Office, 86 Chambers Street, 3rd fl., New York, NY 10007, to the attention of Paralegal Specialist Kathleen Lewis (212) 637-2811 | **Date:**<br><br>11/20/2015<br><br>**Time:**<br><br>10:00 am |
| ☒ | You are required by this Demand to answer the written interrogatories set forth in the attached rider.  Each interrogatory shall be answered separately and fully in writing under oath.  Your submission of the answers to this Demand shall be accompanied by a sworn certificate, as required by 31 U.S.C. § 3733(f).  You are required to submit the answers on the date and at the time designated, or on a date mutually agreed upon between you and the Assistant United States Attorney named above, to the United States Attorney's Office, 86 Chambers Street, 3rd fl., New York, NY 10007, to the attention of Paralegal Specialist Kathleen Lewis (212) 637-2811 | **Date:**<br><br>11/20/2015<br><br>**Time:**<br><br>10 am |
| ☐ | You are required by this Demand to provide oral testimony under oath commencing on the date and at the time designated at the United States Attorney's Office, 86 Chambers Street, 3rd floor, New York, NY 10007, or at such time and in such place that may be agreed upon between the Assistant United States Attorney named above and you.  Your attendance and testimony are necessary to the conduct of the False Claims Act investigation described above.  You have the right to be accompanied by an attorney or other representative during the oral examination.  The transcript of your oral examination and any exhibits will be in the possession of Paralegal Specialist | **Date:**<br><br><br>**Time:** |

Issued at New York, New York, this

_____ day of _____, 20 _____

_____
PREET BHARARA
United States Attorney for the
Southern District of New York

This is the original of the Demand; no copies have been served on other parties.

SDNY Civil Investigative Demand No. 15-78 Rider

I.      Definitions

A.      The terms "you," "your," and "DOH" refer to New York City Department of
        Health and Mental Hygiene, including, but not limited to, all parents, divisions,
        subdivisions, units, subsidiaries, affiliates, predecessors, and all persons acting or
        purporting to act on their behalf, including, but not limited to, their employees,
        supervisors, managers, executives, board members, officers, directors, agents, and
        contractors.

B.      The term "NYCHA" refers to the New York City Housing Authority, including,
        but not limited to, all parents, divisions, subdivisions, units, subsidiaries,
        affiliates, predecessors, and all persons acting or purporting to act on their behalf,
        including, but not limited to, their employees, supervisors, managers, executives,
        board members, officers, directors, agents, and contractors.

C.      The term "DHS" refers to the New York City Department of Homeless Services,
        including, but not limited to, all parents, divisions, subdivisions, units,
        subsidiaries, affiliates, predecessors, and all persons acting or purporting to act on
        their behalf, including, but not limited to, their employees, supervisors, managers,
        executives, board members, officers, directors, agents, and contractors.

D.      "Documents" means, without limitation, any tangible information or
        electronically stored information including, but not limited to, writings, emails
        with attachments, data, metadata, spreadsheets, instant messages, drafts,
        drawings, graphs, charts, photographs, sound or video recordings, images,
        handwritten matter, reports, correspondence, memoranda, records, interviews,
        diaries, accounts, contracts, notes, ledgers or other records of original entry, bank
        statements, checks, archived information and backups of information, including,
        but not limited to, those from disaster recovery systems and data or data
        compilations stored in any medium from which information can be obtained and
        translated, if necessary, by the producing party into reasonably useable form.
        "Documents" shall include originals (or copies if originals are not available) and
        non-identical copies (*e.g.*, containing handwritten or typed notes, highlighting or
        underlining or otherwise) and any translations of any document. The terms
        "communication" and "communications" include any oral or written transmittal
        of information (in the form of facts, ideas, inquiries, or otherwise) or any request
        for information made from one person to another, whether made in person, by
        telephone, by correspondence, by e-mail, electronic or voice message, or by any
        other means.

E.      The singular form of a noun or pronoun shall be considered to include within its
        meaning the plural form as well, and vice versa.

1

F.  The words "or" and "and" are inclusive, referring to any one or more of the disjoined words or phrases, and "any" and "all" also include "each" and "every."

G.  The word "any," when used in reference to a particular set of individuals or entities, refers, inclusively, to any one of such individuals or entities, any subset of such individuals or entities, or all such individuals or entities.

II.  <u>Instructions</u>

A.  Unless otherwise specified in a particular request, this Civil Investigative Demand ("CID") requires production of all documents and information from January 1, 2010, to the present that are responsive to one or more requests and interrogatories below, and are in the possession, custody or control of DOH regardless of where they are located.  If any document requested herein is no longer in DOH's possession, custody or control, identify the document completely and provide the following information:

1.  The present custodian and location of the document; or

2.  The manner in which the document was disposed, including the date of disposal, the reason for disposal, the person authorizing the disposal and the person or persons who disposed of the document.

B.  If no documents exist that are responsive to a request below, you shall include, in your response to this CID and at the time of production, a written statement to that effect.

C.  For any document or part thereof that is not produced by reason of a claim of privilege, you shall state the privilege being claimed, give an explanation for your claim of such privilege, and provide the following information concerning the putatively privileged document:

1.  The type of document;

2.  The subject matter of the document;

3.  The date of the document;

4.  The author of the document, including the author's address, telephone number and employment capacity, and role(s) in relation to DOH;

5.  All recipients of the document, including their addresses, telephone numbers and employment capacity; and roles in relation to DOH;

2

6. The number of pages of the document.

D. In responding to this CID, all documents produced shall be segregated and labeled so as to identify which request(s) such documents respond to. Alternatively, you shall identify, by bates-numbers, the documents responsive to each request herein.

E. In responding to this CID, you shall locate, gather, and produce documents from your files and other sources in such a manner as to insure that the source and location of each document may be readily determined.

F. In responding to this CID, if you locate responsive documents in electronic or hardcopy file folders or other containers, you shall produce these electronic or hardcopy folders and containers, including any labels identifying such folders or containers, together with the responsive documents contained therein.

G. In responding to this CID, documents attached to each other shall not be separated unless you also identify such separation and provide records sufficient to permit the reconstruction of such grouping of documents.

H. In responding to this CID, if you locate any document that has markings on both sides, you shall produce both sides of the document.

I. In responding to this CID, you shall locate, gather, and produce documents or information stored electronically in accordance with the "Document and ESI Production Specifications," attached as "ESI Rider" to the CID.

J. Your obligation of production in response to this CID is a continuing one. Accordingly, responsive documents or information located or created at any time after a response is due shall be promptly produced in the manner specified by this CID.

III. Documents To Be Produced

A. For properties at which NYCHA owns or operates public housing ("NYCHA Public Housing"), data sufficient to show (in Excel spreadsheets or database form, produced in their native format) the following information:

1. All property addresses (including apartment numbers) where individuals with elevated blood-lead levels (EBLs) have been identified;

3

      2.     The date that each such individual with EBLs was identified;

      3.     If performed, the date of any environmental investigation;

      4.     The date the results of the environmental investigation were sent to the property owner; and

      5.     If lead hazard control is required under local law, the date the property was cleared.

B.     For properties at which DHS owns, operates, or funds housing for the homeless ("DHS Homeless Shelters"), data sufficient to show (in Excel spreadsheets or database form, produced in their native format) the following information:

      1.     All property addresses (including apartment numbers) where individuals with elevated blood-lead levels (EBLs) have been identified;

      2.     The date that each such individual with EBLs was identified;

      3.     If performed, the date of any environmental investigation;

      4.     The date the results of the environmental investigation were sent to the property owner; and

      5.     If lead hazard control is required under local law, the date the property was cleared.

C.     Any notification letters and lead-based paint evaluation results regarding the individuals, properties, and incidents referred to in Requests A and B, above.

D.     All documents reflecting complaints of unsafe, unsanitary, or unhealthful conditions in NYCHA Public Housing or DHS Homeless Shelters, including but not limited to documents reflecting complaints of leaks, water damage, mold, particulate matter, peeling paint in pre-1978 buildings, lead paint, rodents, or insects, and all documents reflecting any response to, investigation of, or evaluation of such complaints by DOH, NYCHA, DHS, or any city or state official or agency.

4

E.      All communications between DOH and NYCHA, DHS, or any city, state, or
        federal governmental entity regarding unsafe, unsanitary, or unhealthful
        conditions in NYCHA Public Housing or DHS Homeless Shelters, including but
        not limited to communications relating to leaks, water damage, mold, particulate
        matter, peeling paint in pre-1978 buildings, lead paint, rodents, or insects.

F.      All documents reflecting analysis by DOH, NYCHA, DHS, or any city or state
        official or agency of:

        1.      Health effects of lead on residents of NYCHA Public Housing or DHS
                Homeless Shelters.

        2.      Blood lead levels of residents of NYCHA Public Housing or DHS
                Homeless Shelters (without regard to whether such blood levels equal or
                exceed the Environmental Intervention Blood Lead Level within the
                meaning of 24 C.F.R. § 35.1130) or DHS Homeless Shelters.

G.      All documents reflecting efforts to address lead in NYCHA Public Housing or
        DHS Homeless Shelters.

H.      All documents reflecting analysis by DOH, NYCHA, DHS, or any city or state
        official or agency of:

        1.      Health effects of mold and particulate matter on residents of NYCHA
                public housing or DHS Homeless Shelters.

        2.      Causes of mold and particulate matter in NYCHA Public Housing or DHS
                Homeless Shelters.

I.      All documents reflecting efforts to address mold and particulate matter in
        NYCHA Public Housing or DHS Homeless Shelters.

J.      All documents reflecting analysis by DOH, NYCHA, DHS, or any city or state
        official or agency of:

        1.      Health effects of rodents and insects on residents of NYCHA public
                housing or DHS Homeless Shelters.

        2.      Causes of rodents and insects in NYCHA Public Housing or DHS
                Homeless Shelters.

K.      All documents reflecting efforts to address rodents and insects in NYCHA Public Housing or DHS Homeless Shelters.

IV.   <u>Interrogatories</u>

A.      Identify the individuals most knowledgeable about the matters addressed by the Government's document requests, broken out by request.

B.      Identify and describe all databases containing information relating to complaints of unsafe, unsanitary, or unhealthful conditions in NYCHA Public Housing or DHS Homeless Shelters, including but not limited to documents reflecting complaints of leaks, water damage, mold, particulate matter, peeling paint in pre-1978 buildings, lead paint, rodents, or insects.

**Subpoena Rider**                                         revised August 2015
**Document and ESI Production Specifications**
**United States Attorney's Office**
**Southern District of New York**

## I.   Electronically Stored Information (ESI)

a.   Electronically stored information (ESI) should be produced in accordance with these specifications. If compliance with these specifications would cause undue burden, please contact the SDNY Attorney designated on the subpoena to discuss. Please do not vary from these standards without prior approval from the SDNY Attorney.

b.   SDNY currently uses Concordance and IPRO to manage large-scale ESI productions.

c.   ***All ESI must be produced in both native file format, and electronically converted TIFF image format including extracted text and load files.***

## II.   Transactional and Database Records

a.   Transactional records extracted from a database shall be produced in delimited ASCII text data format or in another easily computer-importable, non-proprietary file format that does not incur a loss of data. Field headers shall be included for each column of data, and a data dictionary or other explanation of the contents of each column shall be provided.

b.   Image data of items associated with transactions, such as checks, shall be produced in graphic data files in a commonly readable, non-proprietary format, such as TIFF or JPEG, with the highest image quality maintained, and named in a manner that uniquely associates them with the relevant transaction record(s).

c.   Where responsive ESI is contained in a complex relational or proprietary database (*e.g.*, Oracle, SAP, SQL, MySQL, QuickBooks) from which records cannot readily be exported without loss of related data, please call the Assistant U.S. Attorney to arrange a meet-and-confer. Identify the database type and version number, and provide the database dictionary and user manuals or other documentation sufficient to describe the structure and content of the database. The meet-and-confer will evaluate, for example, production of a backup of the database (*e.g.*, an .SDF file for a SQL implementation), or other alternatives, such as delimited ASCII exports of custom queries.

d.   Special note to banks: Please produce records of account transactions as indicated in paragraphs a. and b. above, and not simply in the form of an image or printout of a monthly statement.

## III.   Native File Format for ESI

a.   All documents must be provided in the original file or "native" format in which the document was created.

b.   System and executable files should not be produced unless specifically requested.

c.  E-mail files must be delivered in their native format (*e.g.*, Outlook .PST or .msg, Lotus .NSF, etc.).

d.  Relevant information stored in database applications (*e.g.*, Oracle, Sybase, or MSSQL) should only be produced after first consulting with the SDNY attorney to determine method and format of delivery.

e.  Files must be copied and produced in such a manner as to preserve all associated document and file system metadata.

f.  Note: a PDF file is *not* considered a native file unless the document was initially created as a PDF.

## IV.  Electronically Converted TIFF Format for ESI

a.  In addition to the native format, you must also provide an electronically-produced (*i.e.*, not a printed and scanned) TIFF image version, including extracted text and load files, and available metadata, for each document produced in native format.

b.  The electronically converted TIFF production must comply with the TIFF Image Production and Cross Reference File Specifications set forth below.

c.  The electronically converted TIFF production must be provided in a Concordance database (.dcb) with load (.dat) file, images, and image cross-reference file (.lfp). *See* the Concordance Delivered Fields Specifications below.

## V.  Custodian, ESI Source Location, and Path—Naming Conventions

a.  For each document that is produced, the custodian; the ESI source location (*e.g.*, network server, network hard drive, media); and the network or folder path, must be specified.

b.  All ESI provided must be broken down in the following folder structure: by custodian, then by data category (*e.g.*, JohnDoe/Mailfiles/datafiles/desktopfiles).

## VI.  Production of Paper Records

    a.  Paper records should be produced as data in <u>both Concordance format, and in ASCII delimited format</u>, as detailed below.

        1.  Concordance database (.dcb) format:

            i.  In most instances, the StartBates should be the Image Key field unless another field has been designated the key field by the Government.

            ii.  All fields should be indexed.

        2.  ASCII delimited text file (.dat) format

            i.  The first line of the text file must contain the field names.

            ii.  The delimiters used should be the default values used by Concordance: comma (ASCII value 20); quote (ASCII value 254); and newline (ASCII value 174).

            iii. Produce a page header indicator in the following format, <<**batesno**>>, on a separate line for every page of OCR.

    b.  If there will be more than one production, please confirm the database fields and structure remain consistent between data deliveries.

## VII.  Concordance Delivered Fields Specifications

The database and load file provided must contain, at minimum, the first and last Bates number for each document, and all applicable OCR text.  OCR text should be incorporated directly in the Concordance database (.dcb) and the ASCII load file (.dat), and *not* delivered in separate text files.

## VIII.  TIFF Image Production and Cross Reference File Specifications

    a.  Documents should be electronically converted or, if need be, scanned (at 300 dpi) into single-page CCITT Group IV TIFF files.  TIFF file names should match the assigned Bates number of the underlying document page, should be unique, and sequentially numbered.  Searchable PDF files will be accepted only after a consultation between the provider and USAO technical support staff.  Multi-page TIFF files are strongly discouraged.

    b.  Bates numbers should be electronically "endorsed" onto images.  The file name assigned to the image should match the underlying document's Bates number.  Bates numbers should be alpha-numeric, with the numeric portion of the stamp being "zero-filled".  As an example, as assigned Bates numbered series of documents such as "ABC1", "ABC2", "ABC3" would be unacceptable, whereas "ABC000001", "ABC000002", "ABC000003" is preferred.

    c.  Images should be placed on delivered media in a master folder named **XIMAGES**.

    d.  Cross-reference File. TIFF files must be accompanied with an image "cross-reference file," preferably in IPRO .lfp format. This file associates each Bates number with the corresponding single-page TIFF file name and indicates its location on the media provided. The file should contain one line for every page in the collection, and must

contain the document Bates number and the full DOS path to the image, beginning with the media volume.  Below is a sample IPRO file:

IM,ABC-000001,D,0,@VOL01;IMG_0000001;ABC-000001.tif;2,0
IM,ABC-000002,,0,@VOL01;IMG_0000001;ABC-000002.tif;2,0
IM,3542-S-000001,D,0,@VOL01;IMG_0000001;3542-S-000001.tif;2,0
IM,3542-S-000002,,0,@VOL01;IMG_0000001;3542-S-000002.tif;2,0
IM,3542-S-000003,,0,@VOL01;IMG_0000001;3542-S-000003.tif;2,0

## IX.  Delivery Media

a.  All data and image deliveries must be made on CD, DVD, or USB 2.0 external hard drive, depending on data volume.